Argued 11 April, decided 11 June, 1907.

**LATOURETTE *v.* MELDRUM.**

90 Pac. 503.

TRIAL—APPEAL—SUBMITTING ISSUES OUTSIDE THE PLEADINGS.

Care should be exercised to instruct juries only as to matters covered
by the pleadings, and instructions on issues not so fixed are erroneous,
justifying a reversal, even though the evidence on which the instruction
is based was received without objection.

From Clackamas: THOMAS A. M'BRIDE, Judge.

Statement PER CURIAM.

This is an action by A. E. Latourette, "trustee," against H.
H. Johnson, Henry Meldrum, Thomas Charman and J. T.
Apperson to recover the amount of a promissory note executed
by the defendants to the plaintiff November 29, 1896, for the
sum of $2,707, payable in six months, with interest from date
until paid at the rate of 10 per cent per annum. The complaint
is in the usual form, and from a copy of the note set out therein
it appears that the defendants agreed to pay a reasonable sum as
attorney's fees in case action should be instituted to collect the
note or any part thereof, and that Charman and Apperson sev-
erally appended, after their signatures, the word "Security."
Johnson and Meldrum, jointly answering, denied the material

allegations of the complaint, and for a further defense stated that the defendants executed the note mentioned, and at the time it was given it was agreed by the parties thereto that in all matters relating to the payment thereof C. D. and D. C. Latourette were and should continue to be plaintiff's agents, and that the note should be taken in her name to enable them to receive from the defendants a bonus and commissions for making and caring for the loan in addition to the highest rate of interest allowed by law, and that the money furnished was at all times the property of the agents; that it was further agreed by the parties that, as between themselves, Johnson and Meldrum were principals as to two-thirds and one-third, respectively, of the sum stated in the note, and that Charman and Apperson were only sureties thereon, which the plaintiff and her agents at all times well knew; that on or about June 30, 1897, and after the note had matured, Johnson and Meldrum, desiring to secure an extension of time for the payment thereof, entered into an agreement with plaintiff's agents whereby Johnson and one Harold A. Rands assigned to such agents for their principal the right to collect from the United States a sum of money to be paid the assignors for surveying public lands in Idaho, pursuant to a contract therefor, entered into May 6, 1897, upon which there subsequently became due $6,981.36; that such transfer was made June 30, 1897, without the knowledge or consent of Charman or Apperson, and evidenced by an irrevocable power of attorney, in which it is stated that the written authorization to act for the persons giving it was made in consideration of money borrowed from the attorneys in fact, which is the sum loaned to the defendants and for which the note was given; that at the time the transfer was made the entire beneficial interest in the contract and the proceeds accruing therefrom belonged to Johnson, as was then well known to the plaintiff and her agents, who agreed with him and Meldrum that the sum to be collected for making the survey should be received and applied in full satisfaction of the note sued on, the time for the payment of which was extended in consideration

of the execution of the power of attorney and of the assignment of the contract; that, pursuant to the transfer, the plaintiff and her agents collected from the United States $6,981.36, which was in excess of the amount of the note described in the complaint, but, notwithstanding their agreement to apply the money so received on that obligation, they appropriated the whole thereof to other notes made by Johnson, to which the codefendants herein were not parties, without his or their knowledge or consent, and that by reason thereof the note sued on has been fully paid.

Charman and Apperson, jointly answering, pleaded for their first defense substantially the same facts as are alleged by Johnson and Meldrum. For a second defense they repeated several averments of their preceding answer, and alleged that on or about June 30, 1897, and after the note sued on had matured, the plaintiff, for a valuable consideration to her paid by Johnson, and without the knowledge or consent of Charman or Apperson, entered into an agreement with him whereby she extended the time of the payment of the note mentioned until her agents could collect from the United States the money due for making the survey, which sum they were to receive in payment of the note in question. For a third defense, the prior averments referred to are repeated, and it is alleged that, when the note sued on matured, Johnson and Meldrum were severally solvent, as the plaintiff then well knew; that after the note became due these defendants, without any knowledge or notice that the time for the payment thereof had been extended, requested the plaintiff's agents to collect the sum due thereon from the principals, but they refused to comply therewith, and represented that they had accepted from Johnson an assignment of the surveying contract, and that the money to become due thereon was in excess of the amount of the note, upon which representations Charman and Apperson relied and were prevented from taking any action against the principals until they had severally become insolvent; that, pursuant to the assignment of the surveying contract, the plaintiff received from the United States a

sum of money largely in excess of the amount of such note, and that by reason of the representations referred to the plaintiff is, and of right ought to be, estopped to claim that the note or any part thereof is due or payable. The allegations of new matter in the several answers were denied in the replies, and, when the cause was tried, the jury found in favor of Charman and Apperson, but against Johnson and Meldrum, for the amount of the note and attorney's fees, and from the judgment rendered on the verdict the plaintiff appeals from that part which exempts Charman and Apperson from liability, and Johnson and Meldrum also appeal from that part which awards any sum against them.                                               REVERSED.

For appellant there was a brief over the names of *William Wick Cotton* and *C. D. & D. C. Latourette* and *W. A. Robbins,* with an oral argument by *Mr. Cotton.*

For respondents and cross-appellants there was a brief over the names of *William David Fenton, Harvey Edwin Cross* and *E. S. J. McAllister,* with oral arguments by *Mr. Fenton* and *Mr. Cross.*

PER CURIAM. The bill of exceptions narrates that the defendant Johnson and one Harold A. Rands entered into a contract with the United States whereby they were to survey public lands in Idaho, and, desiring to secure money to enable them to comply with the terms of their agreement, they on June 30, 1897, executed to C. D. and D. C. Latourette an irrevocable power of attorney, in which it is stated that the instrument was given for money borrowed from them. The contract with the general government was also assigned at the same time to the attorneys in fact by a written instrument, which, omitting the signature of the parties and the date of execution, is as follows:

"This Memorandum of Agreement, made between H. H. Johnson and Harold A. Rands, parties of the first part herein, and C. D. and D. C. Latourette, parties of the second part herein, witnesseth:

That, Whereas, the said first parties are desirous of negotiating a loan through the said parties of the second part, said par-

ties of the first part giving therefor their personal obligation, together with contract No. 186 with Joseph C. Strangham, U. S. Surveyor General for Idaho, date May 6, 1897, approved June 1, 1897, by Hon. Binger Hermann, Commissioner of the General Land Office at Washington, D. C.; and

Whereas, the parties of the first part herein have assigned, and do by these presents hereby assign, the said contract to C. D. and D. C. Latourette, as trustees, to secure the payment of certain moneys, and have duly executed, acknowledged and delivered to the said C. D. and D. C. Latourette their certain power of attorney, authorizing and empowering the said parties of the second part to collect any money that may be heretofore due upon said contract.

Now Therefore, the said parties of the first part, in consideration of the securement of the said loan by the said second parties and for the further consideration of $1 to said first parties in hand paid, do hereby agree that when said second parties shall receive any money on said contract by virtue of this assignment or by virtue of said power of attorney, then the said second parties shall from said money pay first the loan secured by them for the said parties of the first part, and any note given in renewal thereof, and after the payment of the said sum or sums, any balance remaining over from said collection of said contract may be by the said second parties applied to the payment of such debt or debts owed by the said H. H. Johnson at the time of such collection, held by the Commercial Bank of Oregon City, and such debt or debts of the said H. H. Johnson held at the law office of C. D. and D. C. Latourette, as the second parties may see fit, paying the balance, if any, to the said first parties, or their assigns or representatives.

But It Is Further Understood that, before any payments shall be made by the said second parties of the money to be received on the said contract, the said second parties may before making any other payments retain or keep any sum or sums that they may have expended, or any reasonable compensation for any services performed by reason of said power of attorney, or said assignments of said contract."

The court certifies that the sum of money thus attempted to be secured, but not definitely stated in the power of attorney or agreement, was $1,700; that, when such loan was negotiated, Johnson's name appeared as a maker on promissory notes held by the bank mentioned or by the attorneys in fact, amounting

to $7,782, including the note described in the complaint; that they thereafter loaned him $660, secured from one R. Scott, taking a promissory note therefor, and also paid orders which he drew on them in favor of laborers employed in making the survey, amounting to $1,525.98; that the attorneys in fact received from the United States in March and April, 1899, in full payment of Johnson's work, the sum of $6,981.36, which they applied in discharging the loans made, the orders drawn, certain fees of their own, interest and exchange, amounting to $4,398.16, leaving $2,583.20, which they used in paying certain notes signed by Johnson and held by themselves or by the Commercial Bank of Oregon City; but no application of any part of the money so obtained was made to the note sued on; that on June 30, 1897, they and the bank also held other notes, upon which Johnson's name appeared as a maker, aggregating more than $3,000, no part of which was paid from the money so received; that Johnson, in settling the account with the attorneys in fact, accepted from them, without objection, the notes and orders which they had paid, but, as he was surety only on a part of the notes, he left the obligations on which he was secondarily liable with them for collection, if possible, from the principals. The bill of exceptions further states that Johnson, as a witness in his own behalf, testified that after June 30, 1897, when the written agreement was executed, he requested the attorneys in fact to employ the money to be secured from the United States in discharging the note described in the complaint, and that they assented thereto. He also deposed that at no time were the attorneys in fact prevented from appropriating the money to be received on account of making the survey in discharging the note for $1,700, given for money borrowed from them, in liquidating the loan of $660 made by R. Scott, or in paying the orders, amounting to $1,525.98, issued to the laborers employed; but that all these demands were to be settled before any of the money was to be applied on the note described in the complaint.

The court, in charging the jury in relation to the plaintiff's

alleged extension of time for the payment of the note sued on, as set out in the second defense of Charman and Apperson, said:

"I will state right here now, in regard to that, that the law requires that the time shall be definite, and the extension shall be for a valid consideration. Neither of these is pleaded here, nor is there any proof of any definite extension, and, as far as that is concerned, as to extending the time on the note, you will not consider it."

In speaking of the third defense, as hereinbefore set out, the court further charged the jury as follows:

"There was no evidence that Latourette at that time promised to release the defendants Apperson or Charman, or either of them, from the payment of this note; no evidence that he ever intimated to them in any way that they would be released from the payment of the note in suit. The only evidence was that he intimated to them that the contract would be sufficient security for the new notes they might give (in lieu of the note described in the complaint), and, as they did not give any new notes, they cannot claim to have been misled in this case, and that estoppel is not good."

The court, instructing the jury as to the first defense, said in effect that if they should find at any time after June 30, 1897, when the surveying contract was assigned, that the plaintiff's agents verbally agreed with Johnson that with the money to be received from the United States, they would, after paying the sum of $1,700 loaned, advances, orders and such other expenses as they were required to defray, discharge the promissory note described in the complaint, and, if the money which they secured from the general government was sufficient for all such purposes, then the receipt thereof by the plaintiff's agents for their principal should be deemed a payment of the note sued on, as to all the defendants. An exception to the latter instruction was taken by plaintiff's counsel, who contend that an error was committed in giving it. It will be remembered that the several answers state that on or about June 30, 1897, and after the note sued on had matured, the time for the payment thereof was extended according to the terms of a power of attorney which stipulated that it was given in consideration of money

borrowed from the attorneys in fact, which sum is the money loaned to the defendants and evidenced by the promissory note described in the complaint. This averment is shown to be false by the court's certificate that the sum of money referred to in the power of attorney was $1,700. It is to be inferred from an examination of the bill of exceptions that the defendants' counsel had not seen the written agreement, a copy of which is hereinbefore set out, until the trial, when it was produced by plaintiff and offered in evidence. It would seem that Johnson, who is a party to that agreement, and from whom the defendants' counsel evidently secured the information that supposedly enabled them to prepare their answers, had forgotten the written agreement, the terms of which unquestionably authorized the attorneys in fact, after paying the sums specified, to apply the remainder of the money to be received from the United States upon any debts due from Johnson and held by them or by the bank that they might elect.

After the contract had been received in evidence, Johnson, as a witness in his own behalf, was asked on direct examination, if subsequent to June 30, 1897, the attorneys in fact or either of them agreed with him that the note described in the complaint should be treated as one of the negotiable instruments specified in the written agreement, to which he replied: "That was the understanding." He further testified more in detail concerning the agreement to pay the note sued on from the money to be received from the general government, whereupon the plaintiff's counsel moved to strike out the answers of the witness, on the ground that they were immaterial and irrelevant, because no modification of the contract of June 30, 1897, had been alleged as a defense to the action. The motion was denied, but no exception to this action of the court appears to have been taken. The testimony of this witness is apparently corroborated by that of the defendant Apperson, who, as a witness in his own behalf, testified that some time after the note described in the complaint matured, one of the attorneys in fact requested him to join the other makers in executing a renewal

note, saying that he would incur no liability thereby, because the money to be received from Johnson, on account of the surveying contract that had been assigned, would be sufficient to discharge the obligation; but Apperson refused to comply therewith, assigning as a reason therefor that, if the sum of money to be received was ample for the purpose stated, no necessity existed for the giving of a new note. The attorneys in fact, as witnesses for the plaintiff, severally testified that no agreement was entered into with either of the defendants herein, whereby any part of the money to be received from the United States was to be credited on the note sued on, and based on such contradictory evidence the court gave the instruction hereinbefore noted, to which an exception was reserved.

It is argued by counsel for Charman and Apperson that while the written agreement of June 30, 1897, gave the attorneys in fact the right to wait until receiving the money from the United States before electing the debt or debts owed by Johnson and held by them or by the bank which should be discharged, such right was a mere privilege which they could waive, and if, before receiving the money, the note sued on was selected to be paid therefrom, and an agreement to that effect was entered into with Johnson, the assent was an appropriation of the funds to the payment of that promissory note, which, as the court properly charged, liberated the principals and the sureties from liability thereon. The legal proposition insisted upon, if assented to, would permit the judgment rendered in favor of Charman and Apperson to rest upon a modification of the agreement of June 30, 1897, without an averment of that fact in the answers, in the absence of which it must be conceded as true that the plaintiff had no knowledge thereof and was not prepared to meet such an issue. It is evident from the averments of the several answers that the defendants relied on the original written agreement as affording a defense to the action and not on any verbal modification thereof, and in such case the question to be considered is whether the court erred in charging the jury as to a fact not in issue, though no exception was taken to the intro-

duction of testimony tending to establish such fact. In *Coos Bay R. Co.* v. *Siglin,* 26 Or. 387 (38 Pac. 192), it was held to be reversible error to charge as to an issue not made by the pleadings, though evidence as to the controverted fact was received without objection. It has been repeatedly held that an instruction outside the issues is erroneous, and, if excepted to, the giving thereof in such case is sufficient ground for reversal on appeal: *Hughes* v. *McCullough,* 39 Or. 372 (65 Pac. 85); *Carson* v. *Lauer,* 40 Or. 269 (65 Pac. 1060); *First Nat. Bank* v. *McDonald,* 42 Or. 257 (70 Pac. 901). The several answers failed to allege that the contract of June 30, 1897, had been modified in any manner, and for that reason the instruction objected to is erroneous.

It seems inexplicable that under such an instruction the jury should have found in favor of Charman and Apperson and against Johnson and Meldrum, and we conclude that the cause of justice will be promoted by reversing the judgment and granting a new trial, which are ordered.          REVERSED.

---

Decided 25 June, 1907.